GRETTA V. WILLHIDE, *Executrix, v.* GUY H. BIGGS *et al.*

(No. 8404)

Submitted October 27, 1936. Decided December 15, 1936.

HATCHER, PRESIDENT, and MAXWELL, JUDGE, dissenting in part.

*Joseph J. Madden* and *R. D. Heironimus*, for plaintiff in error.

*Robinson & Stump, J. M. Holt* and *W. M. Lafon*, for defendants in error.

KENNA, JUDGE:

From a verdict and judgment in the Circuit Court of Monroe County in favor of the defendants, Guy H. Biggs and E. V. Core, the plaintiff below, Gretta V. Willhide, executrix of the estate of Walter L. Willhide, deceased, prosecutes this writ of error in an action for death by wrongful act. The alleged cause of action arose out of an automobile accident on the 27th day of July, 1934, on the road known as State Routes Nos. 24 and 56, at a point about two miles south of Elkins.

Plaintiff's decedent, at a little before four o'clock in the afternoon, had driven from Elkins and across the Chenoweth Creek bridge to the farm of Earnest Caplinger. After crossing the bridge, he had made a u-turn to the left and had parked his car approximately 188 feet south of the south end of the bridge. In this position,

the car faced north and rested on the east side of the highway with its left wheels on the hard surface and its right wheels on the berm of the road. Mr. Willhide got out of his car and walked approximately 100 feet further south on the highway in order to meet and converse with Mr. Caplinger who was coming toward the bridge upon a load of hay that he was hauling. Willhide walked beside the wagon back to a point near his car, and here Caplinger turned the wagon to the left across the road and entered a field through a gate in the fence. For the purpose of getting his fishing rod, Willhide then walked west (some of the evidence indicates that he crossed the road in the opposite direction) across the road and was struck by the automobile owned by the defendant, Guy H. Biggs, and driven by the defendant, E. V. Core, which was traveling south toward Monroe County. The car was a Chevrolet coupe and was occupied by E. V. Core, who was driving, Henry McCoy, who was sitting in the middle of the seat, and Guy H. Biggs, who was sitting on the right.

The first contention of the plaintiff in error, plaintiff below, is that the verdict in favor of the defendants is contrary to the evidence. We are of the opinion that this contention is without merit. The testimony of the plaintiff was to the effect that the automobile which struck her decedent was traveling at the rate of 50 miles per hour or faster; that there was a distance of at least 480 feet of straight road and unobstructed view over the bridge from the point where plaintiff's decedent was struck; and that he was run down while in the center of the highway, in perfectly plain view, in broad daylight and upon a dry road, with no other traffic in sight, and nothing to excuse the negligence of the driver. On the other hand, the testimony of the defendants is to the effect that their automobile, as it came upon the bridge, perhaps 300 or 350 feet from the point where plaintiff's decedent was struck, was traveling between 35 and 40 miles an hour, having slowed down for the crossing of the bridge which is narrower than the highway. When they reached the bridge, they saw plaintiff's decedent

some 300 feet away. He was on the right, or west, side of the highway. When something like a 100 feet away, the driver of the automobile blew the horn. Willhide turned and looked in the direction of the car. Instead of stopping or turning back, he proceeded to take one or two steps in the direction of the center of the road, and, in order to avoid him, the driver pulled to the left and applied his brakes. Willhide then quickened his pace toward the center of the road, and in the emergency thus created, the driver of the automobile swerved still further to the left, thinking to avoid him. Instead, Willhide continued and was struck by the right-hand fender of the car, the driver not having been able to turn it far enough to the left to avoid him. Defendants testify that at the time of the impact they were traveling between 15 and 20 miles per hour.

In this state of the evidence, we are of the opinion that it is impossible for us to say that the verdict for the defendants is clearly wrong on the first assignment of error.

Another assignment of error is that based upon the instructions. The plaintiff below, who was accorded eight instructions by the trial court, complained because six instructions also offered by her were not given. Plaintiff also objects to the giving of ten instructions on behalf of the defendants.

In so far as the instructions offered on behalf of the plaintiff are concerned, we are of the opinion that those given fully and fairly presented the case of the plaintiff to the jury. We do not perceive any respect in which the plaintiff's case suffered from the instructions tendered in her behalf and refused.

The principal complaint on account of the instructions given on behalf of the defendants is that they set an incorrect standard by which the jury is told to judge the matter of contributory negligence. Typical of this alleged vice is instruction No. 8, which reads as follows (underscoring supplied) :

"The Court instructs the jury that contributory negligence is such negligence on the part

of the plaintiff *as helped to produce the injury complained of,* and if the jury find from all the evidence in this case that the plaintiff was guilty of *any* negligence that *helped* bring about or produced the injuries complained of, then your verdict should be for the defendants."

This instruction is binding in form, and the plaintiff below asserts that the standard of *any* negligence that *helped* to produce the injuries complained of, is not correct and that it sets up too severe a test.

It has become very difficult to extricate from the mass of case and text declarations on contributory negligence, a rule that may be clearly stated and that adapts itself to practical trial necessities without becoming involved in purely academic and philosophical discriminations which attenuate its usefulness to the disappearing point. The instruction under consideration tells the jury that the plaintiff may not recover if her decedent was guilty of "any" negligence, with the further element that that negligence, to defeat recovery, must have "helped" to bring about the injuries which resulted in the death of the plaintiff's decedent. The case of *State* v. *Surety Co.* (more correctly styled *Myles, Administrator,* v. *American Surety Co.*), 99 W. Va. 123, 127 S. E. 919, we think, makes it perfectly clear that this is not a statement of the correct rule. In that case, there was a general verdict in favor of the plaintiff in spite of the fact that the jury had answered a special interrogatory by which it found that the plaintiff was guilty of negligence which contributed *indirectly* to the plaintiff's injury. The trial court set the verdict aside for the reason that it was of opinion that the answer to the special interrogatory was inconsistent with the general verdict. Upon writ of error, the verdict was re-instated by this court and judgment entered here for the plaintiff, the court finding that negligence on the part of the plaintiff which contributed only *indirectly* to his injuries did not bar recovery. The instruction before us made it possible for the jury in this case to reach exactly the opposite con-

clusion. The jury might have concluded that the plaintiff here was guilty of negligence, and that that negligence contributed (or "helped") indirectly to the plaintiff's injury, and for this reason might have found against the plaintiff's contention, in spite of the fact that such conclusions on the part of the jury, under the case referred to, do not bar recovery. A workable test of contributory negligence seems to be that if the plaintiff's negligence was such that, without it, the negligence of the defendant would have brought about the injuries just the same, the plaintiff's negligence does not bar recovery; otherwise, it does. *Carrico* v. *W. Va. C. & P. Railroad Co.*, 39 W. Va. 86, point 8, Syllabus, 19 S. E. 571, 24 L. R. A. 50. The Virginia court has declared in the case of *Norfolk & Western Railway Co.* v. *Cromers, Admr.*, 99 Va. 763, 792, 40 S. E. 54, 58, that in order to defeat recovery on the ground of contributory negligence, it is not necessary to show that, but for it, the accident would not have occurred; and has said in the case of *Clinchfield Coal Corporation* v. *Osborne's Administrator*, 114 Va. 13, 75 S. E. 750, that in order to defeat recovery, it is not necessary for the defendant to show that the plaintiff's negligence was the "proximate cause" of his injuries. In these respects, the established rule in this state seems to differ, and we are of the opinion that our rule is sounder and more practicable. To say that to defeat recovery the plaintiff's negligence must be an "efficient cause" or must "proximately contribute", or to use language substantially like that in attempting to enlighten a jury, we think, frequently has exactly the opposite effect. To say to a jury, on the other hand, that if the defendant's negligence, notwithstanding the plaintiff's fault, would have caused the injuries just the same, that then the plaintiff can still recover, because his negligence, instead of being considered "contributory" under those circumstances must be considered too remote, while it does not remove all possibility of conjectural results, does give a far more workable, practicable rule. Its corollary naturally follows; that in order to defeat recovery, the plaintiff's negligence must have

been such as that without it, the injuries would not have resulted. This discussion, of course, is subject to the application of the doctrine of last clear chance. For the reasons stated, we are of the opinion that it was error to give defendant's instruction No. 8.

The next assignment of error has to do with the testimony of the defendants, Guy H. Biggs and E. V. Core, who both narrated the circumstances of the accident from the witness stand, including their personal observations of the conduct of the plaintiff's decedent, Walter L. Willhide. Under the holding in the case of *Strode* v. *Dyer,* 115 W. Va. 733, 177 S. E. 878, these witnesses were clearly incompetent to give testimony concerning the actions of Willhide at the time of the accident. The court is fully aware that the practical results of the rule laid down in the *Strode* case may subject it to serious questions and uncertainties, but nevertheless feels that it accords with the weight of authority and is the necessary result of our present statutes. Any change should be the result of legislative policy and not of judicial innovation. But the defendants in error insist that because no objection was made to the competency of the witnesses to testify as to the actions and conduct of plaintiff's decedent, the matter cannot be taken advantage of for the first time in this court. The plaintiff meets this contention by citing the cases of *Rose & Co.* v. *Brown,* 11 W. Va. 122; *Woodville* v. *Woodville,* 63 W. Va. 286, 60 S. E. 140; *Long* v. *Perine,* 41 W. Va. 314, 23 S. E. 611; *Poteet* v. *Imboden,* 77 W. Va. 570, 88 S. E. 1024, 64 A. L. R. 1161n, to the effect that the evidence of the witnesses, being entirely incompetent and not simply inadmissible, the question may be raised in this court even though no objection was made in the court below. The defendants meet these cases by pointing out that they are all cases in equity, and insist that the rule in equity being that no objections and exceptions are required to save legal questions in the record, it follows that the advantage of such an error can be taken for the first time in this court in equity cases, whereas, the rule at law is different. We cannot agree with this last position of the defendants.

An examination of the cases relied upon to sustain it will show that the rule allowing the objection to be taken for the first time in this court is based, not upon the fact that in equity objections and exceptions are generally unnecessary, but upon the total incompetence of the witness to give the testimony that went into the record unobjected to in the court below. The rule is not based upon any principle prevailing in an equity court, but not in a law court. To the contrary, it is well established in this state that even in a court of equity, objections must be taken to the introduction of inadmissible, as distinguished from incompetent, evidence before advantage may be taken of the point raised upon its admission. *Linsey* v. *McGannon,* 9 W. Va. 154; *Vanscoy* v. *Stinchcomb,* 29 W. Va. 263, 11 S. E. 927; *Long* v. *Perine,* 41 W. Va. 314, 23 S. E. 611; *Fulton* v. *Messenger,* 61 W. Va. 477, 56 S. E. 830. See also, *Sayre* v. *Woodward,* 66 W. Va. 288, 66 S. E. 320, 28 L. R. A. (N. S.) 388. Of course, such a rule could not harmonize and exist alongside of the rule sought to be established by the defendants' contention. If the rule in equity permitted, as defendants contend, the raising for the first time in this court of the objection of incompetence simply because of the fact that in equity objections are not necessary, the same rule would necessarily apply to inadmissible testimony. As has been pointed out, it does not so apply. The contention, not being true in one instance, necessarily fails in the other.

This brings us squarely to confront the fact that the rule at present established in this state is to the effect that the incompetence of a witness, where it appears from the record, is a matter that may be taken advantage of for the first time in this court, and that there is no substantial ground for distinguishing the rule in equity from that at law. At the same time, it must be admitted that the rule sustained by the overwhelming weight of authority is to the effect that there must be an objection to the competence of a witness in the trial court as a prerequisite to the consideration of the question in an appellate court. It is unnecessary to review the cases to this effect, which are readily available from the follow-

ing text references: 5 Jones Comm. on Evidence (2d Ed.), section 2276; 1 Wigmore on Evidence (2d Ed.), 586; 28 R. C. L. 516; 70 C. J. 371.

When we examine the history of the rule in this state, we find that there is very little reasonable basis for it. In the case of *Detwiler* v. *Green*, 1 W. Va. 109, 115, it was distinctly held in an action of assumpsit that the incompetence of a witness was waived and could not be taken advantage of upon the hearing of the case where counsel had appeared at the taking of the depositions and, without raising the question of incompetence, had cross-examined the witness. In the case of *Cunningham* v. *Porterfield*, 2 W. Va. 447, the same rule was laid down in an action of debt, but without citing *Detwiler* v. *Green*. These two cases make it clear that the early West Virginia rule was in accord with what is now the weight of authority. After their decision, in 1867 the Virginia Supreme Court of Appeals decided the case of *Fant* v. *Miller & Mayhew*, 17 Gratt. (58 Va.) 187, where it was declared parenthetically and by way of obiter that objections to testimony on the ground of the incompetence of the witness could be raised in the appellate court without previous exception. Then, in 1877, this court decided the chancery case of *Hill* v. *Proctor*, 10 W. Va. 59, in which the language of the Virginia court in *Fant* v. *Miller & Mayhew* was quoted. The parenthetical part of this language, indicating that no objection is necessary to save the question of the incompetence of a witness, seems to have been used by way of obiter. Thereafter in 1877, our case of *Rose & Co.* v. *Brown*, 11 W. Va. 122, was decided. This case lays down the rule that objection to the testimony of an incompetent witness may be made for the first time in this court, though no objection was made in the court below. The case contains almost no discussion of the rule and contents itself with the citation of *Hill* v. *Proctor*, 10 W. Va. 59. It fails to mention either *Detwiler* v. *Green*, 1 W. Va. 109, or *Cunningham* v. *Porterfield*, 2 W. Va. 447.

In this state of the law in West Virginia, the Virginia Supreme Court of Appeals in 1880, decided the case of

*Simmons* v. *Simmons' Admr.*, 33 Gratt. (74 Va.) 451, in which that court definitely departed from the rule indicated in *Fant* v. *Miller & Mayhew*, 17 Gratt. (58 Va.) 187, and put the rule in Virginia in line with the weight of authority to the effect that objection to testimony based upon the incompetence of witnesses must be raised for the first time in the trial court.

In spite of the fact that the Virginia court had refused to follow the rule laid down in *Fant* v. *Miller & Mayhew*, this court continued to follow the rule declared in our cases which did follow it. Subsequent to *Rose & Co.* v. *Brown*, 11 W. Va. 122, this court in the following cases, adhered to the rule that the question of the incompetence of a witness may be raised for the first time in this court: *Martin, Admx.* v. *Smith*, 25 W. Va. 579; *Kimmel, Admr.* v. *Shroyer*, 28 W. Va. 505; *Vanscoy* v. *Stinchcomb*, 29 W. Va. 263, 11 S. E. 927; *Long* v. *Perine*, 41 W. Va. 314, 23 S. E. 611; *Woodville* v. *Woodville*, 63 W. Va. 286, 60 S. E. 140; *Cooper* v. *Cooper*, 65 W. Va. 712, 64 S. E. 927; *Sayre* v. *Woodyard*, 66 W. Va. 288, 66 S. E. 320, 28 L. R. A. (N. S.) 388; *Poteet* v. *Imboden*, 77 W. Va. 570, 86 S. E. 929, 64 A. L. R. 1161n.

It will be observed from the foregoing that the departure in this state from the general rule accepted by the weight of authority had no justification in precedent. We are of the opinion that it has not justification in principle. In order, therefore, that the rule in this state may accord with what we regard as the better legal reasoning, as well as with the weight of the decided cases, we now hold that objections to testimony on the ground of the incompetence of a witness to testify cannot be raised in this court either in law or equity unless the question has been raised and passed upon by the trial court; and to the extent that the West Virginia cases herein cited conflict with this holding, they are expressly overruled. This conclusion results in this case in holding that the objection made here for the first time to the testimony of the witnesses Biggs and Core cannot be heard.

For the reasons given, the judgment of the Circuit

Court of Monroe County is reversed, the verdict set aside and the plaintiff awarded a new trial to be had in accordance herewith.

*Reversed and remanded.*

MAXWELL, JUDGE, dissenting in part:

I concur in the result, but I dissent from syllabus two. My reasons for this dissent are set forth in the dissenting opinion in *Strode* v. *Dyer*, 115 W. Va. 733, 177 S. E. 878.

HATCHER, PRESIDENT:

I concur in Judge Maxwell's position as above stated.