# Wytheville.

PORTSMOUTH STREET RAILROAD CO. v. PEED'S ADMINISTRATOR.

JUNE 16, 1904.

1. TRIAL—*Irrelevant Evidence—Motion to Strike Out—Street Railways.*—When there is no evidence to support a count in a declaration charging that a personal injury is inflicted by reason of defendant's negligence in failing to equip its street cars with suitable fenders, it is proper for the court, on the motion of the defendant, to strike from the evidence a city ordinance relating to such car fenders.

2. TRIAL—*Declaration—Lack of Evidence to Support One Count—Motion to Disregard.*—If there is no evidence to support one count of a declaration, the trial court should, on motion of the defendant, instruct the jury to disregard that count. The motion to disregard the verdict is the only remedy the defendant has, under the circumstances. The rationale for disregarding such a count is the same as in case of a variance between the evidence and the allegation.

3. INSTRUCTIONS—*Within Issue—Evidence to Support—Street Railways—Excessive Speed.*—Where the only ground of negligence charged against a street car company, in an action for a personal injury, is excessive speed and a defective fender, and there is no evidence to support the latter, it is error to instruct the jury that either a failure to give notice of the approach of the car, or its excessive speed, would entitle the plaintiff to recover, as excessive speed is the only issue made by the pleadings which the evidence tends to support.

4. VARIANCE—*Allegation and Proof—Objection to Evidence—Motion to Exclude.*—In case of variance between the evidence and allegations, the usual and correct practice is to object to the evidence when offered, or move to exclude it. Attention is thus called to the discrepancy and an opportunity afforded the trial court to meet

the emergency, in a proper case, in one of the modes prescribed by section 3384 of the Code.

5. STREET RAILWAYS—*Persons Crossing—Look and Listen.*—Generally speaking, one who is about to cross a street railroad should both look and listen for cars, but this is not an inflexible rule; nor is it to be enforced with any such strictness as in the case of an ordinary steam railroad. It is not negligence, as a matter of law, to omit to do so. The question is whether a prudent man, acting prudently, would have thought it unnecessary to do so. In the case at bar this rule was only partially stated, and in such way as was calculated to mislead the jury.

6. DEATH BY WRONGFUL ACT—*Elements of Damage.*—In an action, under the statute, for death by the wrongful act or neglect of another, the jury, in estimating the damages, may take into consideration compensation for the loss of deceased's care, attention and society to his family, together with such sum as they may deem fair and just by way of solace and comfort to them for the sorrow, suffering and mutual anguish occasioned by his death, not exceeding in the aggregate $10,000.

7. STREET RAILWAYS—*Persons Crossing—Look and Listen—Defective Hearing—Contributory Negligence—Case at Bar.*—The plaintiff's intestate, who was run over and killed by a street car, being deaf, and having given no intimation of an intention to cross the track until the car was so close to him that it could not be stopped in time to avert the accident, the defendant company was entitled to an instruction asked telling the jury that it is the duty of a person approaching a street car track to exercise the care which ordinarily prudent persons would exercise, and to make such use of his faculties as ordinarily prudent persons would make use of under similar circumstances, and if such person is deaf, it is more incumbent on him to exercise his sight; and if they believe from the evidence that the deceased failed to exercise such care, and his failure to do so contributed to the accident in which he met his death, they must find for the defendant. In the case at bar, the addendum made by the court was, under the evidence, erroneous.

8. INSTRUCTIONS—*Different Theories of Case—Evidence to Support.*—It is error to refuse to give an instruction which presents one party's theory of the case, when there is evidence which tends to support that theory.

9. EVIDENCE—*Weight—Relevancy—Speed of Train.*—An objection to the evidence of a witness on the ground that he could not tell the speed at which a car was running at his distance from, or position relative to, the car, goes to its weight with the jury, and not to its relevancy.

10. EVIDENCE—*Refreshing Memory—Stenographic Notes.*—A witness may look at the notes of a stenographer taken at a former trial of a case for the *bona fide* purpose of refreshing his memory. It is not necessary that he should have made the notes himself.

Error to a judgment of the Hustings Court of the city of Portsmouth in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

After the evidence was all in, the court gave the following instructions at the instance of the plaintiff:

## "Plaintiff's Instruction No. 1."

"The court instructs the jury, that if they believe from the evidence that the defendant, on or about the 3rd day of March, 1899, owned and operated a certain street railway, and ran and operated its cars by means of electricity over certain streets in the city of Portsmouth, Virginia, and especially over Crawford street, in said city, or that portion of it at or near where it intersects with Crawford street, in said city, for the transportation of passengers, then it was the duty of the defendant to use reasonable care in operating its cars to avoid injuring all persons having a legal right to be on said street, and to use said crossing, and to this end it was its duty not only to give proper notice or warning of the approach of its cars to the crossing of said Crawford and Columbia streets, but also to run its cars at such a rate of speed as to have them under control and be able to stop them readily at or near said crossing; and if the jury further believe from the evidence that while Leroy L. Peed was attempting to cross from one side of Crawford street to the other over or near said Columbia street crossing on or about the 3d day of

March, 1899, in the exercise of such care as under the circumstances might reasonably be expected of a prudent person, a car of the said defendant came along said Crawford street going in a northerly direction, and approached the said crossing without giving proper notice or warning of its approach, or at such rate of speed that it could not be readily stopped at or near said crossing, and struck the said Leroy L. Peed with great force, and so injuring him that he died from such injuries, and that the negligent manner in which the defendant operated its said car was the proximate cause of said injury, they must find for the plaintiff."

"Plaintiff's Instruction No. 2, as given by the Court."

"The court instructs the jury that Leroy L. Peed had the same right to cross on Crawford street at or near the Columbia street crossing as the defendant's car had to cross Columbia street at or near its intersection with Crawford street, and that Leroy L. Peed in crossing, if they believe from the evidence that he attempted to cross at or near that point, was not required to anticipate negligence on the part of the defendant in approaching with its car said Columbia street, but had the right to assume that the defendant would give proper warning of the approach of its car, and would run its car as it neared said crossing at such a rate of speed as to have the car under control, and to be able to stop it readily. And if the jury further believe from the evidence that the decedent, Leroy L. Peed, before attempting to cross the defendant's track used ordinary care in looking and listening to ascertain whether in the exercise of ordinary care he could prudently attempt to cross the track, and that under the circumstances of the case it was not imprudent in him to undertake to cross the track, and that he used ordinary care while crossing it, and that while crossing the track the defendant's car approached the said crossing without proper warning,

and at such a rapid rate of speed as not to be readily stopped, and negligently run over the said decedent and killed him, they must find for the plaintiff."

"Plaintiff's Instruction No. 3, as given by the Court."

"The court further instructs the jury that the failure to look for an approaching street car by a person about to cross a street railway track, especially at a street crossing, is not negligence as a matter of law—the street car having no superior right to that of a pedestrian. The question is whether a prudent person, acting prudently, would have thought it unnecessary to do so, and this must be determined by the jury upon all the facts and circumstances of the case."

"Plaintiff's Instruction No. 5, as given by the Court."

"The court instructs the jury that if they shall find for the plaintiff, in estimating his damages, they may take into consideration compensation for the loss of his decedent's care and attention and society to his family, together with such sum as they may deem fair and just by way of solace and comfort to them for the sorrow, suffering and mental anguish occasioned by his death, not to exceed, however, the sum of $10,000."

Thereupon the defendant asked the court to instruct the jury as follows:

## No. 1.

"The court instructs the jury that the gist of this action is negligence, and that the plaintiff must prove by affirmative evidence that the defendant company, or its agents, were negligent as charged in the declaration, and that the decedent came to his

death by the said negligence.   Unless, therefore, the plaintiff has proved by a preponderance of testimony both of these facts, they must find for the defendant.

"Instruction No. 2, as asked for by the Defendant."

"The court instructs the jury that even if they should find from the evidence that the defendant company was negligent, as charged in the declaration, yet if they find from the evidence that the decedent, Mr. Peed, failed to exercise ordinary care, and that his failure to exercise ordinary care, contributed to the accident, then they must find for the defendant.

"Instruction No. 3, as asked for by Defendant."

"The court instructs the jury that it is the duty of a person approaching a street car track to exercise the care which ordinarily prudent persons would exercise, and to make such use under similar circumstances, and if such person so approaching a street car track is deaf, it is the more incumbent upon him to exercise his sight, and if they believe from the evidence that the decedent, Leroy Peed, failed to exercise such care, and his failure to do so contributed to the accident in which he met his death, and that the motorman of the defendant, after he saw said Peed go upon the track, used ordinary care to stop the car, then they must find for the defendant.

"Instruction No. 4, as asked for by Defendant."

"The court instructs the jury that if they believe from the evidence the motorman of the defendant company saw Mr. Peed, the decedent, on the street, but outside of the tracks of the defendant company, and gave warning either by ringing his gong, or by crying out to him, then the said motorman had the right

to assume that the decedent would not put himself in danger, but would keep out of the way of the approaching car, and if they further believe from the evidence that Mr. Peed, the decedent, did not heed the warning of the motorman, but proceeded upon the track of the defendant, and that when he got upon the said track the car of the defendant was so close upon him that the motorman could not, by the exercise of ordinary care, stop the car in time to avert the accident, then they must find for the defendant."

"Instruction No. 5, as asked for by the defendant."

"The court instructs the jury that if they believe from the evidence that the decedent, Mr. Peed, stepped in front of the moving car of the defendant company, and that the car was then so close upon him a collision could not be avoided by the utmost care on the part of the defendant's employees, then they must find for the defendant."

"Instruction No. 6, as asked for by the defendant."

"The court instructs the jury that if they believe from the evidence that the decedent, Mr. Peed, stepped immediately in front of the moving car of the defendant company, and that this was not at a street crossing, and that the car was then so close upon him that a collision could not be avoided by the utmost care on the part of the defendant's employees, then they must find for the defendant."

To the giving of these instructions the plaintiff, by counsel, objected, and the court sustained his objection to instructions numbered 5 and 6, and refused to give them, and modified instructions 2, 3 and 4, and gave them in the modified form, notwithstanding the objection of the defendant to the modification. Instruction number 1 was given, as asked.

These instructions, as modified, were in the following words and figures:

"Defendant's Instruction No. 2, as altered and given by the Court."

"The court instructs the jury that even if they should find from the evidence that the defendant company was negligent, as charged in the declaration, yet if they find from the evidence that the decedent, Mr. Peed, failed to exercise ordinary care, and that his failure to exercise ordinary care contributed to the accident, then they must find for the defendant; unless they further believe from the evidence that the defendant, after discovering the peril of Leroy L. Peed, or by the exercise of ordinary care might have discovered it, could by the exercise of ordinary care have avoided the injury and failed to do so."

"Defendant's Instruction No. 3, as altered and as given by the Court."

"The court instructs the jury that it is the duty of a person approaching a street car track to exercise the care which ordinarily prudent persons would exercise, and to make such use of their faculties as ordinarily prudent persons would make use of under similar circumstances, and if such person so approaching a street car track is deaf, it is the more incumbent upon him to exercise his sight, and if they believe from the evidence that the decedent, Leroy L. Peed, failed to exercise such care, and his failure to do so contributed to the accident in which he met his death, and if they further find from the evidence that the motorman saw, or by ordinary care might have seen, the decedent go upon the track or approach the track with the apparent intention to cross it, and thereafter used ordinary care to stop the car, they must find for the defendant.

"Defendant's Instruction No. 4, as given by the Court."

"The court instructs the jury that if they believe from the evidence that the motorman of the defendant company saw Mr. Peed, the decedent, on the street, but outside of the tracks of the defendant company, and by his actions or movements indicating no intention to approach and cross the track, and gave warning either by ringing his gong, or by crying out to him, then the said motorman had the right to assume that the decedent would not.put himself in danger, but would keep out of the way of the approaching car, and if they further believe from the evidence that Mr. Peed, the decedent, did not heed the warning of the motorman, but proceeded upon the track of the defendant, and that when he got upon the said track, or showed an intention to cross the track, the car of the defendant was so close upon him that the motorman could not by the exercise of ordinary care stop the car in time to avert the accident, then they must find for the defendant. But, on the contrary, if the jury believe from the evidence that the motorman of the defendant saw the decedent, and when he saw him the decedent was moving towards the track of the defendant in such a way as to indicate his intention to cross it, and the motorman thereafter gave warning, either by ringing his gong or by crying out to him, and the decedent did not heed the said warning, but continued to proceed to cross the track, and in such a manner as to reasonably indicate to the motorman that the decedent from deafness did not hear the said warnings, and thereafter the motorman had sufficient time within which by the exercise of ordinary care to stop his car and avoid injuring the decedent, but did not do so, they must find for the plaintiff."

*Richard B. Tunstall* and *T. J. Wool,* for the plaintiff in error.

*John W. Hopper* and *Frank L. Crocker,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

On the afternoon of March 3, 1899, plaintiff's intestate, Leroy L. Peed, while attempting to cross Crawford street at or near its intersection with Columbia street, in the city of Portsmouth, was struck by a passing car of the defendant company, receiving injuries from which he died. Thereupon the defendant in error instituted this action against the plaintiff in error to recover damages for the alleged negligent killing of his intestate, which resulted in the judgment now under review.

The declaration contains two counts. The first count alleges that the accident was due to the negligence of the defendant in running its cars "at such a great, high and rapid rate of speed as to become thereby unmanageable and incapable of being stopped when occasion for stopping the same should arise;" whilst the second count attributes the accident to the negligence of the defendant in failing to equip its cars with suitable fenders.

At the trial, after the evidence had closed, the defendant moved the court to strike out an ordinance of the city of Portsmouth with respect to car-fenders on the ground that there was no evidence tending to show a failure of duty on the part of the defendant in that regard, which motion the court sustained. Whereupon the defendant submitted a further motion, that the jury be instructed to disregard the second count of the declaration, as there was no evidence to support it, which motion the court overruled. Sustaining the second motion was a corollary to granting the first, and the court erred in overruling it.

The jury returned a general verdict, and it cannot be affirmed that their finding was not influenced by the ruling of the court with respect to the second count, notwithstanding the fact that there was no evidence to sustain it. The court, in the presence of the jury, had refused to instruct them to disregard the count, and they may naturally have interpreted that ruling to mean that they must regard it.

The only remedy which a defendant has in such case is to move the court to instruct the jury to disregard the unsustained count. Being unobjectionable in form, it is not amenable to demurrer; and the defendant cannot demur to the evidence, where, as in this case, there is another count in the declaration with some evidence tending to uphold it. The rationale for disregarding such a count is the same as in case of a variance between the evidence and allegation—both rest upon the fact of a failure to prove what is alleged. *Roe* v. *Crutchfield,* 1 Hen. & Mun. 361; *Bush* v. *Campbell,* 26 Gratt. 431; *B. & O. Ry. Co.* v. *Whittington,* 30 Gratt. 810; *Richmond Ry. & Elec. Co.* v. *Bowles,* 92 Va. 738, 24 S. E. 388; *Eckles* v. *N. & W. Ry. Co.,* 96 Va. 69, 25 S. E. 545; *Richmond Ry. & Elec Co.* v. *West,* 100 Va. 184, 40 S. E. 643; *West* v. *Richmond Ry. & Elec. Co., ante* p. 339, 46 S. E. 33.

While that error alone might not warrant a reversal, the ruling involves a question of practice, which ought to be settled.

The next assignment of error relates to the ruling of the court on instructions.

The objection to the first instruction, given at the instance of the plaintiff, is that it was not justified by the pleading. As remarked, the declaration sets out two grounds of negligence, namely, excessive speed and a defective fender. There being no evidence to support the second charge, the only ground upon which the plaintiff could recover, if at all, was for the alleged excessive speed; yet the instruction injected into the case a new element, and told the jury that either a failure to give warning of the approach of the car, or its excessive speed, would entitle the plaintiff to recover. Under the authorities cited above, the court erred in instructing the jury that they could find a verdict on a case not made by the declaration. It should be observed, however, in that connection that in case of a variance between the evidence and allegations, the usual and correct practice is to object to the evidence when offered, or move to exclude it. Atten-

tion is thus called to the discrepancy and opportunity afforded
the trial court to meet the emergency in a proper case in one of
the modes prescribed by section 3384 of the Code.

Plaintiff's second instruction is subject to the same objection
as the first; and that part of the instruction predicated on the
jury's belief from the evidence that the deceased used ordinary
care in looking and listening before attempting to cross Crawford
street, is liable to the further objection that there was no evi-
dence on which to base it.

The third instruction told the jury that failure to look for an
approaching car by a person about to cross a street railway track,
especially at a street crossing, is not negligence as a matter of
law, the street-car having no superior right to that of a pedes-
trian, the question being whether a prudent person, acting pru-
dently, would have thought it necessary to do so.

While the qualifying language lessens the vice of the instruc-
tion, it does not entirely remove its misleading tendency. The
doctrine on the subject is thus stated in 2 Shearman & Redfield
on the Law of Negligence (5th Ed.) at pp. 869-870:

"While, generally speaking, one who is about to cross a street
railroad should both look and listen for cars, this is not an in-
flexible rule; nor is it to be enforced with any such strictness as
in the case of an ordinary steam railroad. It is not negligence,
as a matter of law, to omit to do so. The question is, whether
a prudent man, acting prudently, would have thought it unneces-
sary to do so."

The above statement of the law is quoted with approval by
this court in the recent case of *Bass* v. *Norfolk Ry. Co.,* 100
Va. 1, 40 S. E. 100. The statement of a part of the rule, without
the context, was calculated to mislead the jury, and, therefore,
ought not to have been given.

The remaining instruction of the plaintiff, to which objection
is made, relates to the measure of damages. The instruction
told the jury that "if they shall find for the plaintiff, in esti-

mating his damages, they may take into consideration compensation for the loss of his care, attention and society to his family, together with such sum as they may deem fair and just by way of solace and comfort to them for the sorrow, suffering and mental anguish occasioned by his death, not to exceed, however, the sum of $10,000."

The evidence shows that the deceased was sixty-four years of age; that he left a family consisting of a wife, three sons and two daughters, and that he was a ship-caulker by trade, with practically constant employment. This evidence was sufficient to warrant the court in giving the instruction. *Baltimore & Ohio R. R. Co.* v. *Noell's Admr.*, 32 Gratt. 394.

The next assignment of error is the refusal of the trial court to give the third instruction asked for by the defendant, and the modification of that instruction.

The instruction told the jury that it is the duty of a person approaching a street-car track to exercise the care which ordinarily prudent persons would exercise, and make such use of his faculties as ordinarily prudent persons would make use of under similar circumstances, and if such person is deaf, it is more incumbent upon him to exercise his sight; and if they believe from the evidence that the deceased failed to exercise such care, and his failure to do so contributed to the accident in which he met his death, *and if they further find from the evidence that the motorman saw, or by ordinary care might have seen, the decedent go upon the track or approach the track with apparent intention to cross it, and thereafter used ordinary care to stop the car,* they must find for the defendant. The addendum of the court is italicized.

The instruction, as offered by the defendant, is a correct exposition of the law applicable to the evidence of the only witness for the plaintiff who saw the accident. The car was running on Crawford street, which runs north and south, and is intersected by Columbia street, running east and west. The deceased,

who was proved to have been deaf, started from the southeast corner of Columbia street, and crossed that street, walking outside the track until he passed a delivery wagon in front of a store on the northeast corner, when, with his back toward the approaching car, and his head bent forward, he attempted to cross the track, and had not taken more than two steps before the car struck him. The witness further testified that he did not think the deceased was going on the track, and, if he had thought so, he would certainly have called out to save him. The testimony of several of the defendant's witnesses also tends to sustain the theory that the deceased gave no indication of his intention to cross the track until the car was so close upon him that it could not be stopped in time to avert the accident. Upon this evidence the defendant was entitled to the instruction asked for without the qualification made to it by the court.

The same objection obtains to the court's addition to defendant's instruction number four. The amendment involves the principle embodied in the qualification to instruction number three, and, for the reason stated in that connection, ought not to have been given.

Instructions five and six, which the court rejected, told the jury that if they believed from the evidence that the deceased stepped in front of a moving car of the defendant when the car was so close upon him that a collision could not be avoided by the utmost care on the part of defendant's employees, they must find for the defendant.

The evidence referred to tended to sustain that theory, and the court erred in refusing to give the instructions. *Richmond Traction Co.* v. *Martin, ante,* p. 205, 45 S. E. 886.

There are two other assignments of error which may be briefly noticed. The first assignment is to the admission of the testimony of a witness for the plaintiff, with respect to the speed of the car. His evidence was objected to as giving the rate of speed eighty feet from the scene of the accident, and because the

position of the witness, who was standing in his storehouse, twenty or twenty-five feet from the door, was not such as to enable him to determine the rate of speed of the car.

Of both objections it may be remarked that they affect the weight rather than the admissibility of the evidence. There is, therefore, no error in that assignment.

The remaining assignment is the refusal of the court to permit a witness, who had testified on a former occasion, to refresh his memory from the stenographer's minutes of his testimony.

It was permissible to allow this reference to the minutes for the *bona fide* purpose of refreshing the memory of the witness, but not to contradict him. The rule in such case does not require that the paper should have been made by the witness. *Harrison* v. *Middleton,* 11 Gratt. 527, 544; 1 Greenleaf on Ev. (16 Ed. by Migmore), sec. 439c.

For the foregoing reasons the judgment of the trial court must be reversed and annulled, the verdict of the jury set aside, and the case remanded for a new trial to be had, not in conflict with the views expressed herein.

*Reversed.*